# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE, individually and on behalf of his minor child, JANE DOE, | |
| JOAN DOE, individually and on behalf of her minor child, JANE DOE, | Civil Action No.: 2:23-cv-01593 |
| *Plaintiffs*, | |
| v. | |
| ADAM ZYGMUNT, individually and in his official capacity as Principal of Canfield Avenue Elementary School, | |
| LEE NITTEL, individually and in his official capacity as District Superintendent of Mine Hill Township School District, | **COMPLAINT AND JURY DEMAND** |
| MINE HILL TOWNSHIP SCHOOL DISTRICT BOARD OF EDUCATION, a public entity, | |
| MINE HILL TOWNSHIP SCHOOL DISTRICT, a public school district, | |
| DIEGO MARQUEZ, | |
| DENISE CASOLA-MARQUEZ, and | |
| JACK DOES 1-10 and ABC ENTITIES 1-10, fictitious parties, | |
| *Defendants*. | |

Samuel D. Jackson, Esq.
LENTO LAW GROUP, P.C.
NJ Attorney ID: 130452017
3000 Atrium Way, Suite 200, Mt. Laurel, NJ 08054
T: (856) 652-2000 x476, F: (856) 375-1010
sdjackson@lentolawgroup.com

<u>**COMPLAINT AND JURY DEMAND**</u>

*This cause of action arises from Defendants' failures to satisfy their legal duties to protect the health, safety and welfare of Jane Doe, including but not limited to deliberately indifferent responses to repeated student-on-student sexual harassment and bullying on school premises. Defendants' failure to promptly and appropriately investigate and respond to the incidents, despite having full knowledge of their occurrence, subjected Plaintiffs' minor child to repeated sexual harassment, bullying, and a hostile environment, effectively denying her access to educational opportunities. This action alleges violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, among other causes of action.*

Plaintiffs JOHN DOE[1] and JOAN DOE[1], individually and on behalf of their minor child, JANE DOE[1], by and through their attorneys, Lento Law Group, P.C., bring this action for damages and other legal and equitable relief against Defendants ADAM ZYGMUNT, LEE NITTEL, MINE HILL TOWNSHIP SCHOOL DISTRICT BOARD OF EDUCATION, MINE HILL TOWNSHIP SCHOOL DISTRICT (collectively, "School Defendants"), DIEGO MARQUEZ, and DENISE CASOLA-MARQUEZ (collectively "Parent Defendants"), and JACK DOES 1-10 and ABC ENTITIES 1-10 (collectively, "Fictitious Defendants"), alleging as follows:

I.      **LOCAL CIVIL RULE 10.1 STATEMENT.**

The mailing addresses of the parties to this action are:

John Doe, individually and on behalf of Jane Doe, his minor child (Address withheld to maintain anonymity, *See*, p. 4, ¶ 6)

Joan Doe, individually and on behalf of Jane Doe, her minor child (Address withheld to maintain anonymity, *See*, p. 4, ¶ 7)

Adam Zygmunt
Canfield Avenue Elementary School
42 Canfield Avenue
Mine Hill, NJ 07803

---

[1] "John Doe", "Joan Doe", and "Jane Doe" have been substituted for the Plaintiffs' names and the name of Plaintiffs' minor child, to protect their anonymity.

Lee Nittel
Mine Hill Township School District
42 Canfield Avenue
Mine Hill, NJ 07803

Mine Hill Township School District Board of Education
42 Canfield Avenue
Mine Hill, NJ 07803

Mine Hill Township School District
42 Canfield Avenue
Mine Hill, NJ 07803

Diego Marquez
3 Arthur Road
Stanhope, NJ 07874

Denise Casola-Marquez
3 Arthur Road
Stanhope, NJ 07874

## II.    JURISDICTION AND VENUE

1.      Plaintiffs bring this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (collectively, "Title IX"), as more fully set forth herein.

2.      This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related to the Title IX claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

4.      This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) & (b)(2), as all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## III.   PARTIES

6.      At all times relevant hereto, Plaintiff John Doe is an adult resident citizen of the County of Morris, State of New Jersey. He is the parent and natural guardian of Jane Doe, a minor, and brings this action individually and on her behalf. Due to the sensitive nature of the allegations herein, particularly given the descriptions of the sexual harassment, John Doe, Joan Doe, and Jane Doe are proceeding under pseudonyms to protect their privacy and ask this Court to allow them to continue to proceed under these pseudonyms.

7.      At all times relevant hereto, Plaintiff Joan Doe is an adult resident citizen of the County of Morris, State of New Jersey. She is the parent and natural guardian of Jane Doe, a minor, and brings this action individually and on her behalf. Due to the sensitive nature of the allegations herein, particularly given the descriptions of the sexual harassment, John Doe, Joan Doe, and Jane Doe are proceeding under pseudonyms to protect their privacy and ask this Court to allow them to continue to proceed under these pseudonyms.

8.      Plaintiffs' child, Jane Doe, is a minor female, aged six (6) at the time of the occurrences herein complained of. Due to the sensitive nature of the allegations herein, particularly given the descriptions of the sexual harassment, John Doe, Joan Doe, and Jane Doe are proceeding under pseudonyms to protect their privacy and ask this Court to allow them to continue to proceed under these pseudonyms.

9.      At all times relevant hereto, Defendant Adam Zygmunt ("Zygmunt"), is, upon information and belief, an adult resident citizen of the County of Morris, State of New Jersey,

and was at the time of the occurrences herein complained of, and so remains, the principal of Canfield Avenue Elementary School and the Title IX Coordinator responsible for coordinating the districts compliance with Title IX, including training, review district policies and procedures, grievance procedures for resolving complaints, and staying informed of current legal and judicial decisions related to Title IX as well as initiating the process once a complaint is received, and, upon information and belief, can be served at Canfield Avenue Elementary School, located at 42 Canfield Avenue, Mine Hill, NJ 07803.

10.    At all times relevant hereto, Defendant Lee Nittel ("Nittel"), is, upon information and belief, an adult resident citizen of the County of Morris, State of New Jersey, and was at the time of the occurrences herein complained of, and so remains, the District Superintendent of the Canfield Avenue School District, and, upon information and belief, can be served at Canfield Avenue Elementary School, located at 42 Canfield Avenue, Mine Hill, NJ 07803.

11.    At all times relevant hereto, Defendant Mine Hill Township School District Board of Education ("BOE"), is, per N.J.S.A. 18A:11-1 *et seq.*, a public entity operating under the New Jersey Department of Education, tasked with performing all acts and doing all things, consistent with law and the rules of the State Board of Education, necessary for the lawful and proper conduct, equipment, and maintenance of the public schools of the Mine Hill Township School District.

12.    At all times relevant hereto, Mine Hill Township School District ("School District") is a general powers school district as defined by N.J.S.A. 18A:13-1, *et seq.*, a public entity operating under the New Jersey Department of Education, tasked with performing all acts and doing all things, consistent with law and the rules of the State Board of Education, necessary

for the lawful and proper conduct, equipment, and maintenance of the public schools of the Mine Hill Township School District.

13.    At all times relevant hereto, Defendant Diego Marquez is, upon information and belief, an adult resident citizen of the County of Sussex, State of New Jersey, and was at the time of the occurrences herein complained of, and so remains, the father of the minor child J.M., and, upon information and belief, resides and can be served at 3 Arthur Road, Stanhope, NJ 07874.

14.    At all times relevant hereto, Defendant Denise Casola-Marquez is, upon information and belief, an adult resident citizen of the County of Sussex, State of New Jersey, and was at the time of the occurrences herein complained of, and so remains, the mother of the minor child J.M., and, upon information and belief, resides and can be served at 3 Arthur Road, Stanhope, NJ 07874.

15.    At all times relevant herein, Defendants, JACK DOES 1-10 (fictitious names) and ABC BUSINESS ENTITIES 1-10 (fictitious entities), are believed to be individuals or entities whose actions or omissions contributed in some relevant and material way to the causes of action complained of herein. Plaintiffs do not presently know the true identities of these Defendants, but will seek leave to amend the Complaint to properly name these Defendants after conducting discovery, should the need arise.

## IV. GENERAL FACTUAL ALLEGATIONS

16.    At all relevant times herein, Plaintiffs' minor child, Jane Doe, was a student within the Mine Hill Township School District, and specifically, was a student enrolled in and physically attending school at Canfield Avenue Elementary School ("CAS") as a first grader.

17.    From as early as September 7, 2021, until October 6, 2021, and for an indeterminate period of time thereafter, CAS first grader J.M. exposed his penis to multiple

female students, touched them inappropriately, and pressured some of them into exposing themselves to him.

18.    Multiple students reported this pattern of sexual harassment by J.M. to Defendant Principal Adam Zygmunt at least as early as the last week of September, possibly even earlier.

19.    Nevertheless, J.M.'s sexual harassment was permitted to continue, and the school environment remained unsafe until at least October 6, 2021, and for an indeterminate period of time thereafter.

20.    In the days leading up to and including October 6, 2021, J.M. exposed his penis multiple times to Jane Doe and touched her vagina multiple times as well. He also asked her to expose herself to him.

21.    On or about mid-day on October 6, 2021, Jane Doe told Defendant Zygmunt during her lunchtime that she needed to tell him something. Defendant Zygmunt refused to listen to her, and instead told her to just see him after school.

22.    Accordingly, during the time between when school ended and after-school activities began, Jane Doe had to track Defendant Zygmunt down after school, to remind him of her need to speak with him. Jane Doe eventually found Defendant Zygmunt in the gym area, and said "Don't forget, I wanted to talk to you." Only after she located Defendant Zygmunt did Jane Doe and Defendant Zygmunt go to his office, where Plaintiff reported J.M.'s harassment to Zygmunt.

23.    On October 6, 2021, Principal Zygmunt was (and still is) the Title IX Coordinator, and as such, his primary responsibility was initiating the appropriate processes once he received a complaint.

24.     Upon receiving Jane Doe's complaint, Principal Zygmunt failed to take appropriate action.

25.     Later that evening, Jane Doe informed her parents, Plaintiffs John and Joan Doe, that J.M. had exposed his penis to her and touched her vagina. Jane Doe also informed Plaintiffs that she had reported this sexual harassment by J.M. to Defendant Zygmunt.

26.     Plaintiffs were understandably devastated, as well as surprised, because neither Zygmunt nor any other school personnel had contacted them about the issue.

27.     Plaintiffs immediately emailed Defendant Zygmunt, requesting confirmation that he had spoken with Jane Doe, and requesting a meeting as soon as possible. That same evening, Zygmunt emailed them back, indicating that he had spoken with Jane Doe and would call them the following day. Plaintiffs informed Zygmunt that they would meet him the next morning before school at Canfield Avenue Elementary School.

28.     The next morning, Plaintiffs arrived at CAS and met with Zygmunt. Zygmunt again confirmed that he had spoken with Jane Doe the day before. When Plaintiff Joan Doe began to recount the allegations about J.M.'s sexual harassment, Zygmunt interrupted her, stating "Yeah, yeah, we know all about that."

29.     Shocked, Joan Doe demanded to know why Zygmunt had not contacted Plaintiffs immediately upon receiving Jane Doe's report. Zygmunt replied something along the lines of, "Yes, I'm sorry, I should've called you guys but, I just thought I would come in today and investigate, since this is part of last week's complaints," and clarified that "We are aware, we already received complaints from other children last week."

30.     When Joan Doe demanded to know what had been done in response to the earlier complaints, Zygmunt merely stated that he had contacted J.M.'s parents regarding the

misconduct. He then attempted to excuse his inaction in response to Jane Doe's report by explaining that he thought her report related to the slew of earlier reports he had received the week before, and claimed that he did not contact any other parents about the issue, even without identifying J.M., due to concerns about confidentiality.

31.     Zygmunt went on to explain that in response to the series of reports about J.M.'s sexual harassment of multiple children, J.M.'s parents were contacted, unspecified services were put in place, and teachers were alerted to pay extra attention to J.M. and watch for offending behavior.

32.     While it is unclear what "services" were provided to J.M. as remedial measures, J.M. was not assigned an aide who would watch him throughout the day, nor was he sent home or segregated from the other students in any way, or placed in a smaller classroom where he would be easier to supervise. Instead, he was allowed to continue attending classes and freely interacting with other students, in the cafeteria and elsewhere. As a result, J.M. was able to repeat his behavior without interference and carry out the completely avoidable attacks on Jane Doe.

33.     At that point, Plaintiffs asked Principal Zygmunt to explain what the school's policy was in situations such as these. At first, he claimed he could not share the policy due to privacy reasons, and was then unable to articulate the policy.

34.     Plaintiffs asked whether he had alerted the New Jersey Division of Child Protection and Permanency ("DCPP"), and receiving no satisfactory answer, warned him that they would be notifying DCPP if he did not do so.

35.     To avoid causing Jane Doe to feel like she was being punished for reporting J.M.'s harassment, Plaintiffs hoped to allow her to attend school that day, since it was "Pajama

Day," something Jane Doe had been looking forward to. However, to protect her from further assaults, they were not willing to let her attend classes with J.M., so they inquired whether J.M. would be permitted to remain at school that day. Zygmunt would not agree to send J.M. home, despite all of the reports of his ongoing behavior, and wanted to let J.M.'s parents decide whether he would remain at school.

36.     Later that morning, Zygmunt and Defendant Superintendent Lee Nittel met with John Doe and informed him that Zygmunt spoke with J.M., who admitted to an incident on October 5, 2021, the day before Jane Doe's report, and that J.M. would not be returning to school for a while.

37.     Around lunchtime on October 7, 2021, the school nurse, N. Vetter, called John Doe and informed him that Jane Doe was in the nurse's office complaining of a stomach ache and asking to go home, so John Doe picked her up and took her home.

38.     N.J.S.A. 59:2-1.3 removes the requirement of providing a notice of claim to the public entity being sued (which would otherwise be required under N.J.S.A. 59:8-8 of the New Jersey Tort Claims Act) in cases like this one that seek damages for a prohibited sexual act. However, Plaintiffs did serve a Notice of Claim herein on October 18, 2021.

39.     In the following weeks Jane Doe continued to experience symptoms relating to the incidents, including crying outbursts, gastrointestinal issues, separation anxiety, fearfulness, withdrawn, depression, anxiety, and nightmares, so Plaintiffs took her to see a mental health professional, who determined that attending school at the same location where the attacks occurred was worsening her trauma and resulting symptoms, so after December 2, 2021, Plaintiffs never brought her back, and arranged for other schooling instead, at significant cost.

40.     According to Detective Ornelas of the Wharton Police Department, on October 12, 2021, six days after Jane Doe reported the incident with J.M., and weeks after the first reports were made, someone from Canfield Avenue Elementary School finally reported J.M.'s behavior.

41.     Shortly after the events above, John Doe, Joan Doe, and Jane Doe began receiving mental health treatment to address the trauma of what happened to Jane Doe and the impact that it had on the entire family, and they have all remained in treatment to date, upon the recommendations of their doctors.

42.     According to his doctor, John Doe has been diagnosed with major depressive disorder as a result of the events described herein.

43.     According to her doctor, Joan Doe has been diagnosed with depression and insomnia, and has also experienced flashbacks, nightmares feelings of guilt, an inability to stop ruminating thoughts about the traumatic event, loss of appetite, loss of libido, and a loss of interest in previously enjoyable activities, all as result of the events described herein.

44.     According to her doctor, Jane Doe has been diagnosed with adjustment disorder with anxiety, and has also experienced anxiety and disassociation in regard to her previous school, CAS, all as a result of the events described herein.

45.     The Mine Hill Township Student Code of Conduct, promulgated by Defendant BOE provides in relevant part, that

> "…pupils shall not: … E. Engage in the sexual and/or other harassment of pupils or staff members;"

> (Available at https://www.minehillcas.org/documents/Student-handbook-2021-2022.pdf.)

46.     The Mine Hill School District website explains that "Our district is required to respond in a manner that is not deliberately indifferent when there is actual knowledge of sexual

harassment occurring within our educational program or activity." (Available at https://www.minehillcas.org/Our-School/Title-IX-Information---Discrimination-/index.html)

47. The website further provides that "Canfield Avenue School desires to provide a safe school environment that allows all students equal access and opportunities in the district's academic and other educational support programs, services, and activities. The Board prohibits, at any district school or school activity, unlawful discrimination, harassment, intimidation, and bullying of any student based on the student's actual race, color, ancestry, national origin, ethnic group identification, age, religion, marital or parental status, physical or mental disability, sex, sexual orientation, gender, gender identity, or gender expression; the perception of one or more of such characteristics; or association with a person or group with one or more of these actual or perceived characteristics." (Available at https://www.minehillcas.org/non-discrimination/)

48. Despite the New Jersey Anti-Bullying Bill of Rights ("ABR")'s requirement that the Harassment, Intimidation, and Bullying ("HIB") policy appear in any publication of the school district that sets forth the comprehensive rules, procedures, and standards of conduct for schools in the district, and in any student handbook, the HIB policy is not part of the Mine Hill Township School District Student/Parent Handbook ("Handbook"). Rather, the handbook simply advisees that "our Harassment, Intimidation, & Bullying Policy (HIB) located on our website," (p. 10) and that "Canfield Avenue School's HIB Policy 5512.01 can be found on the district's website." (p. 11). The only statement relating to HIB policy that can be found in any of the Mine Hill School District's publications consists of four brief rules found on page 11 of the Handbook:

    1. We will not bully others.

    2. We will try to help students who are bullied.

    3. We will try to include students who are left out.

4. If we know that somebody is being bullied, we will tell an adult and an adult at home.

(Available at https://www.minehillcas.org/documents/Student-Handbook-2022-2023.pdf)

49.     Despite the ABR's requirement that the HIB policy be posted prominently on the school district's website, and despite the Handbook's statements that the HIB policy can be found on the District's website, no such link to the Mine Hill Township School District's HIB policy appears anywhere on its website, nor does the policy itself. (Available at https://www.minehillcas.org/)

50.     The actual HIB policy for Mine Hill School District can be found at https://www.straussesmay.com/seportal/Public/DistrictPolicy.aspx?policyid=5512&id=83d15f9a2b8747b99b3de18d31b5d9b4, and states in relevant parts:

A. Policy Statement

The Board of Education prohibits acts of harassment, intimidation, or bullying of a student. A safe and civil environment in school is necessary for students to learn and achieve high academic standards. Harassment, intimidation, or bullying, like other disruptive or violent behaviors, is conduct that disrupts both a student's ability to learn and a school's ability to educate its students in a safe and disciplined environment. Harassment, intimidation, or bullying is unwanted, aggressive behavior that may involve a real or perceived power imbalance. . . .

B. Harassment, Intimidation, and Bullying Definition

"Harassment, intimidation, or bullying" means any gesture, any written, verbal or physical act, or any electronic communication, as defined in N.J.S.A. 18A:37-14, whether it be a single incident or a series of incidents that:

1. Is reasonably perceived as being motivated by either any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic;

2. Takes place on school property, at any school-sponsored function, on a school bus, or off school grounds, as provided for in N.J.S.A. 18A:37-15.3;

3. Substantially disrupts or interferes with the orderly operation of the school or the rights of other students; and that

a. A reasonable person should know, under the circumstances, that the act(s) will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his/her person or damage to his/her property; or

b. Has the effect of insulting or demeaning any student or group of students; or

c. Creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

Schools are required to address harassment, intimidation, and bullying occurring off school grounds, when there is a nexus between the harassment, intimidation, and bullying and the school (e.g., the harassment, intimidation, or bullying substantially disrupts or interferes with the orderly operation of the school or the rights of other students).

* * *

D. Consequences and Appropriate Remedial Actions
* * *

The Board of Education requires its school administrators to implement procedures that ensure both the appropriate consequences and remedial responses for students who commit one or more acts of harassment, intimidation, or bullying, consistent with the Code of Student Conduct. . . .

* * *

Consequences for a student who commits one or more acts of harassment, intimidation, or bullying may range from positive behavioral interventions up to and including suspension or expulsion of students, as set forth in the Board's approved Code of Student Conduct pursuant to N.J.A.C. . . .

Remedial measures shall be designed to correct the problem behavior, prevent another occurrence of the problem, protect and provide support for the victim of the act, and take corrective action for documented systemic problems related to harassment, intimidation, or bullying. . . .

* * *

Page **14** of **55**

Personal – Target/Victim

1. Meet with a trusted staff member to explore the student's feelings about the incident;

2. Develop a plan to ensure the student's emotional and physical safety at school;

3. Have the student meet with the school counselor or school social worker to ensure he or she does not feel responsible for the bullying behavior;

4. Ask students to log behaviors in the future;

5. Help the student develop skills and strategies for resisting bullying; and

6. Schedule a follow-up conference with the student.

\* \* \*

Examples of Remedial Measures – Environmental
(Classroom, School Building, or School District)

\* \* \*

8. Increased supervision in "hot spots" (e.g., locker rooms, hallways, playgrounds, cafeterias, school perimeters, buses);

\* \* \*

20. Supervision of student victims before and after school, including school transportation;

21. Targeted use of monitors (e.g., hallway, cafeteria, locker room, playground, school perimeter, bus);

22. Targeted use of teacher aides;

23. Disciplinary action, including dismissal, for school staff who contributed to the problem;

24. Supportive institutional interventions, including participation in the Intervention and Referral Services Team, pursuant to N.J.A.C. 6A:16-8;

25. Parent conferences;

26. Family counseling;

27. Development of a general harassment, intimidation, and bullying response plan;

28. Behavioral expectations communicated to students and parents;

29. Participation of the entire student body in problem-solving harassment, intimidation, and bullying issues;

30. Recommendations of a student behavior or ethics council;

31. Participation in peer support groups;

32. School transfers; and

33. Involvement of law enforcement officers, including school resource officers and juvenile officers or other appropriate legal action.

\* \* \*

Target/Victim Support

Districts should identify a range of strategies and resources that will be available to individual victims of harassment, intimidation, and bullying, and respond in a manner that provides relief to victims and does not stigmatize victims or further their sense of persecution. The type, diversity, location, and degree of support are directly related to the student's perception of safety.

Sufficient safety measures should be undertaken to ensure the victims' physical and social-emotional well-being and their ability to learn in a safe, supportive, and civil educational environment.

Examples of support for student victims of harassment, intimidation, and bullying include:

1. Teacher aides;
2. Hallway and playground monitors;
3. Partnering with a school leader;
4. Provision of an adult mentor;
5. Assignment of an adult "shadow" to help protect the student;
6. Seating changes;
7. Schedule changes;
8. School transfers;
9. Before- and after-school supervision;
10. School transportation supervision;
11. Counseling; and
12. Treatment or therapy.

E. Harassment, Intimidation, and Bullying Reporting Procedure

The Board of Education requires the Principal at each school to be responsible for receiving complaints alleging violations of this Policy. All Board members, school employees, and volunteers and contracted service providers who have contact with students are required to verbally report alleged violations of this Policy to the Principal or the Principal's designee on the same day when the individual witnessed or received reliable information regarding any such incident. All Board members, school employees, and volunteers and contracted service providers who have contact with students, also shall submit a report in writing to the Principal within two school days of the verbal report.

The Principal or designee will inform the parents of all students involved in alleged incidents, and, as appropriate, may discuss the availability of counseling and other intervention services. The Principal or designee shall take into account the circumstances of the incident when providing notification to parents of all students involved in the reported harassment, intimidation, or bullying incident and when conveying the nature of the incident, including the actual or perceived protected category motivating the alleged offense. The Principal, upon receiving a verbal or

written report, may take interim measures to ensure the safety, health, and welfare of all parties pending the findings of the investigation.

* * *

A school administrator who receives a report of harassment, intimidation, and bullying from a district employee, and fails to initiate or conduct an investigation, or who should have known of an incident of harassment, intimidation, or bullying and fails to take sufficient action to minimize or eliminate the harassment, intimidation, or bullying, may be subject to disciplinary action.

* * *

G. Harassment, Intimidation, and Bullying Investigation

The Board requires a thorough and complete investigation to be conducted for each report of violations and complaints which either identify harassment, intimidation, or bullying or describe behaviors that indicate harassment, intimidation, or bullying.

* * *

H. Range of Responses to an Incident of Harassment, Intimidation, or Bullying

The Board shall establish a range of responses to harassment, intimidation, and bullying incidents and the Principal and the Anti-Bullying Specialist shall appropriately apply these responses once an incident of harassment, intimidation, or bullying is confirmed.  The Superintendent shall respond to confirmed harassment, intimidation, and bullying, according to the parameters described in this Policy.  The range of ways in which school staff will respond shall include an appropriate combination of counseling, support services, intervention services, and other programs. The Board recognizes that some acts of harassment, intimidation, or bullying may be isolated incidents requiring the school officials respond appropriately to the individual(s) committing the acts.  Other acts may be so serious or parts of a larger pattern of harassment, intimidation, or bullying that they require a response either at the classroom, school building, or school district level or by law enforcement officials.

For every incident of harassment, intimidation, or bullying, the school officials must respond appropriately to the individual who committed the act. The range of responses to confirmed harassment, intimidation, or bullying acts should include individual, classroom, school, or district responses, as appropriate to the findings from each incident. Examples of responses that apply to each of these categories are provided below:

1. Individual responses can include consistent and appropriate positive behavioral interventions (e.g., peer mentoring, short-term counseling, life skills groups) intended to remediate the problem behaviors.

2. Classroom responses can include class discussions about an incident of harassment, intimidation, or bullying, role plays (when implemented with sensitivity to a student's situation or involvement with harassment, intimidation, and bullying), research projects, observing and discussing audio-visual materials on these subjects, and skill-building lessons in courtesy, tolerance, assertiveness, and conflict management.

3. School responses can include theme days, learning station programs, "acts of kindness" programs or awards, use of student survey data to plan prevention and intervention programs and activities, social norms campaigns, posters, public service announcements, "natural helper" or peer leadership programs, "upstander" programs, parent programs, the dissemination of information to students and parents explaining acceptable uses of electronic and wireless communication devices, and harassment, intimidation, and bullying prevention curricula or campaigns.

4. District-wide responses can comprise of adoption of school-wide programs, including enhancing the school climate, involving the community in policy review and development, providing professional development coordinating with community-based organizations (e.g., mental health, health services, health facilities, law enforcement, faith-based organizations), launching harassment, intimidation, and bullying prevention campaigns.

* * *

P. Reports to Law Enforcement

Some acts of harassment, intimidation, and bullying may be bias-related acts and potentially bias crimes and school officials must report to law enforcement officials either serious acts or those which may be part of a larger pattern in accordance with the provisions of the Memorandum of Agreement Between Education and Law Enforcement Officials.

* * *

**COUNT I**
**TITLE IX VIOLATION**
**SEXUAL HARASSMENT**
*AS TO SCHOOL DEFENDANTS*
**(20 U.S.C. § 1681, *et seq.*)**

51.     Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

52.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states in relevant part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[…]

53.     Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106.

54.     The Supreme Court of the United States in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), recognized that a recipient of Federal financial assistance intentionally violates Title IX, and is subject to a private action for damages, where the recipient has actual notice of, and is "deliberately indifferent" to, acts of teacher-student sexual misconduct.

55.     In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court of the United States extended private actions for damages recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

56.     *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

a.     deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

b.     the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 633.

57.     Defendant Zygmunt, and Defendant Nittel, together with the other School Defendants created and/or subjected Plaintiff Jane Doe to a hostile educational environment through J.M.'s sexually inappropriate and abusive conduct, in violation of both Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX") and the school district's own anti-harassment policy, because:

      a.     Jane Doe was a minor child at the time the sexual harassment and sexual assault occurred;

      b.     Jane Doe was a member of a protected class;

      c.     Jane Doe was subjected to sexual harassment in the form of unwanted exposure of genitals and sexual assault by another student;

      d.     School Defendants breached their Title IX duties in various ways, taking deliberate steps to prioritize the reputation of School Defendants and protect J.M. over Jane Doe's welfare, and its obligations to her under Title IX. These deliberate failures include:

          i.     School Defendants' lack of policies and procedures and by the School Defendants' individual and collective failure to adhere to and follow the procedures laid out in their own policies with respect to sexual harassment and assault

          ii.     School Defendants' individual and collective failure to timely report, intervene, investigate and/or address the sexual assault and ongoing harassment and bullying they knew was being perpetrated upon Jane Doe by another student within the school;

iii.      School Defendants' deliberate decision not to provide CAS students, including Jane Doe, with safety measures and accommodations following receipt of complaints regarding J.M.'s conduct;

iv.      School Defendants' deliberate decision not to provide Jane Doe with safety measures and accommodations following her complaint regarding J.M.'s conduct;

v.      School Defendants' deliberate decision not to comply with its own policies, laws pertaining to Title IX and sexual harassment, as well as meeting its obligations under state law;

vi.      School Defendants' deliberate decision to allow J.M. to remain on campus with female students after receipt of complaints regarding J.M.'s conduct;

vii.      School Defendants' failure to inform Plaintiffs, or update them, of the complaints made about J.M.'s conduct and/or inform them of the investigation or outcome of the investigation of those complaints;

viii.      The School Defendants' deliberate decision to do nothing to eliminate the risk of actual retaliation and/or defamation by J.M. and his parents, prevent its recurrence and/or address its effects on Jane Doe.

e.      The sex-based harassment articulated in Plaintiffs' General Factual Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff Jane Doe of access to educational opportunities or benefits provided by her schools.

58.      The School Defendants each had, or should have had, actual knowledge of the sexual harassment and assault upon Jane Doe and other CAS students by J.M., given reports by other parents and students to Principal Zygmunt of similar misconduct by J.M., Plaintiff Jane

Doe's reporting of same to Zygmunt, and given the mandatory reporting requirements imposed on Zygmunt with respect to the other School Defendants in their respective positions of authority within the School District over Zygmunt.

59.     The individual and collective failures of the School Defendants to promptly and appropriately respond to the known sexual harassment, perpetuated the sexually hostile educational environment, ultimately resulted in Jane Doe, on the basis of her sex, being deprived access to the educational opportunities or benefits provided by the district, in violation of Title IX.

60.     The School Defendants failed to take immediate, reasonable, effective remedial steps to resolve the known sexual harassment, especially given the policies within the Defendant District, established for these very scenarios.

61.     The School Defendants persisted in their inaction even after they had actual or constructive knowledge of the harm suffered by Jane Doe and other students, and even despite the duties placed upon them to affirmatively act in response to their knowledge of the sexual harassment and assault perpetrated upon Jane Doe by another student within the Defendant District.

62.     Therefore, the School Defendants engaged in a pattern and practice of behavior demonstrating their deliberate indifference towards the deprivation of the educational opportunities or benefits to which Jane Doe was otherwise entitled.

63.     Jane Doe has suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: severe emotional distress, physical symptoms relating to emotional distress, loss of future earnings and earning capacity, potential reputational damage, and damage to and delays in Jane Doe's pursuit of education.

64.     John Doe has suffered extreme emotional distress and psychological damage, along with physical symptoms relating to same, and his character and standing in his community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards John Doe's rights under Title IX.

65.     Joan Doe has suffered extreme emotional distress and psychological damage, along with physical symptoms relating to same, and her character and standing in her community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards Joan Doe's rights under Title IX.

66.     Collectively, Plaintiffs have suffered significant mental, emotional, physical, financial, and reputational harm as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards Joan Doe's rights under Title IX.

**COUNT II**
**TITLE IX VIOLATION**
**HOSTILE ENVIRONMENT**
***AS TO SCHOOL DEFENDANTS***
**(20 U.S.C. § 1681, et seq.)**

67.     Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

68.     For a Title IX "before" claim, a student must show:

(1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff

suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school."

69.     The School Defendants was deliberately indifferent to prior incidents of sexual harassment by J.M. and the sexually hostile environment that created, as explained in Count I, *supra*. As a result, it failed to institute any accommodations for Jane Doe's safety, including, but not limited to:

a.     timely removing J.M. from the CAS campus following receipt of reports of sexual harassment by J.M. at CAS;

b.     timely reporting J.M.'s sexual harassment of one or more students, and publicizing this matter to the campus community; and/or

c.     failing to provide CAS students with safety measures and accommodations guarding against harassment by J.M. following receipt of complaints regarding J.M.'s conduct;

d.     failing to provide Jane Doe with safety measures and accommodations following her complaint regarding J.M.'s conduct;

70.     J.M.'s harassment of students occurred at CAS; and, therefore, in a context subject to the School Defendants' control

71.     Jane Doe was subjected to sexual harassment so severe, pervasive and objectively offensive that she was denied access to educational opportunities and benefits as described above.

72.     Jane Doe has suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: severe emotional distress, physical

symptoms relating to emotional distress, loss of future earnings and earning capacity, potential reputational damage, and damage to and delays in Jane Doe's pursuit of education.

73.     John Doe has suffered extreme emotional distress and psychological damage, along with physical symptoms relating to same, and his character and standing in his community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards John Doe's rights under Title IX.

74.     Joan Doe has suffered extreme emotional distress and psychological damage, along with physical symptoms relating to same, and her character and standing in her community have suffered, as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards Joan Doe's rights under Title IX.

75.     Collectively, Plaintiffs have suffered significant mental, emotional, physical, financial, and reputational harm as a direct and proximate result of the sexually abusive and exploitative conduct that was furthered by the School Defendants' deliberate indifference towards Joan Doe's rights under Title IX.

**COUNT III**
**§ 1983 VIOLATION**
**14TH AMENDMENT - EQUAL PROTECTION**
***AS TO SCHOOL DEFENDANTS***
**(42 U.S.C. § 1983)**

76.     Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

77.     Plaintiffs make a claim under 42 U.S.C. § 1983 for violation of Plaintiff Jane Doe's rights under the Fourteenth Amendment to the United States Constitution.

78.     42 U.S.C. § 1983 provides in relevant part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

79.     Under the Fourteenth Amendment to the United States Constitution, Jane Doe has the right as a public school student to personal security, bodily integrity, and equal protection under the law as it relates to such.

80.     The Defendants named in this Count are "persons" under 42 U.S.C. §1983.

81.     All School Defendants were all state actors, acting under the color of state law at the time the sexually and physically abusive conduct by J.M. occurred, and further, were all state actors, acting under color of state law at the time their individual acts or omissions constituting equal protection violations occurred.

82.     All School Defendants have violated the rights of Jane Doe to personal security, bodily integrity, and equal protection under the law through their ongoing deliberate indifference to the sexual hostile and abusive actions of J.M., another student within the Defendant District for which they are responsible, and further, to the sexually and physically hostile environment created by J.M.'s actions.

83.     Plaintiff Jane Doe treated differently due to her sex and gender, given the lax approach the School Defendants had when a female reported sexual harassment by a male. Further, based on the fact that J.M. only targeted females, Plaintiff Jane Doe was targeted due to her sex and gender, which are protected characteristics.

84.     Plaintiff Jane Doe was subjected to a hostile school environment due to the severe and pervasive harassment she suffered, and she was denied the ability to receive an education as a result of this hostile environment.

85.     The School Defendants had actual and constructive notice of this harassment and hostile environment because they were warned multiple times about J.M.'s repetitive conduct in the weeks leading up to the times Plaintiff Jane Doe was targeted.

86.     The School Defendants nevertheless took no measures whatsoever to stop it, and failed to protect Plaintiff Jane Doe against the harassment they knew she was suffering based on her sex and gender, which are protected characteristics.

87.     The conduct alleged herein was performed by the School Defendants and their employees, while acting within the scope of their employment for which the School Defendants are liable to Plaintiffs for damages they sustained as a result of such conduct.

88.     All School Defendants are or were at the time of the events complained of herein, administrators or policymakers for the purpose of promulgating and/or implementing these unconstitutional customs, practices, or policies within the Defendant District, and were thus acting under color of state law.

89.     Plaintiffs have suffered significant mental, emotional, physical, financial, and reputational harm as a direct and proximate result of the sexually abusive and exploitative conduct of J.M. that was furthered by the failures of the School Defendants, manifesting a violation of Jane Doe's constitutional right to equal protection.

**COUNT IV**
**§ 1983 VIOLATION**
***MONELL* CLAIM – FAILURE TO TRAIN AND SUPERVISE**
***AS TO SCHOOL DEFENDANTS***
**(42 U.S.C. § 1983)**

90.     Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

91.     Plaintiff Jane Doe makes a claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

92.     42 U.S.C. § 1983 provides in relevant part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

93.     The Defendants named in this Count are "persons" under 42 U.S.C. §1983.

94.     Under the Fourteenth Amendment to the United States Constitution, Jane Doe has the right as a public school student to personal security, bodily integrity, and equal protection under the law as it relates to such.

95.     Fellow student, J.M., repeatedly violated these rights of Jane Doe and other CAS students as alleged herein.

96.     These violations, consisting of sexual assault were advanced by the failures of all School Defendants to adequately train and supervise those School District employees with the power and authority to (1) prevent such conduct as J.M.'s, (2) failing that, to promptly detect and appropriately investigate such conduct as J.M.'s, and (3) to appropriately mete out just punishment in connection with such conduct as J.M.'s.

97.     The School Defendants were all state actors, acting under the color of state law at the time J.M.'s sexually and physically abusive conduct occurred.

98.     The School Defendants have adopted general policies regarding sexual harassment as cited herein; however, they have manifested inadequate implementation and/or enforcement of said policies, evidencing both inadequate procedural policies and failures of the School Defendants to train and supervise those within the school district tasked with such implementation and/or enforcement.

99.     In short, the Defendant District's anti-harassment policies take an overall reactive, rather than proactive, approach to sexual harassment of students, and perpetuate inadequate training and supervision of district employees, such that the failures demonstrated by the School Defendants are the likely results. Furthermore, when confronted with instances of sexual harassment, School Defendants even failed to meet the insufficient reactive standard promulgated by their own policies.

100.    Thus, the failures of the School Defendants, both in practice and as reflected in the district's lax policies, to adequately train and supervise school district employees amounted to deliberate indifference to the probability of harm faced by the students in their charge, such as Jane Doe, as a result of these lax practices and policies, and were a driving force in perpetuating the abusive and harassing conduct which Jane Doe was subjected to by J.M. and which was the cause of the significant mental, emotional, physical, financial, and reputational harm suffered by the Plaintiffs herein.

**COUNT V**
**§ 1983 VIOLATION**
***MONELL* CLAIM – UNCONSTITUTIONAL POLICY OR PRACTICE**
***AS TO SCHOOL DEFENDANTS***
**(42 U.S.C. § 1983)**

101.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

102.    Plaintiff Jane Doe makes a claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

103.    42 U.S.C. § 1983 provides in relevant part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress...

104.    Under the Fourteenth Amendment to the United States Constitution, Jane Doe has the right as a public school student to personal security, bodily integrity, and equal protection under the law as it relates to such.

105.    The Defendants named in this Count are "persons" under 42 U.S.C. §1983.

106.    The School Defendants and their managerial employees, agents, and representatives, by virtue of their positions of authority and decision-making and policy-setting powers over CAS are responsible for the policies and practices of CAS, including the conduct of the Defendants named herein.

107.    The School Defendants and their managerial employees, agents, and representatives, have acted with reckless and deliberate indifference to the rights and liberties of Plaintiffs, and have purposefully, intentionally, willfully, and knowingly maintained, enforced, and applied an unconstitutional custom, policy, and/or practice of sexual harassment, fostering a hostile environment, and providing differential treatment based on a protected class, in violation of the Fourteenth Amendment rights of Plaintiffs and others similarly situated to them.

108.    This pattern of unconstitutional policies and practices was known to the School Defendants, as alleged in Section IV, *supra*, and affected numerous children within the state of

New Jersey who attended CAS. Specifically, *inter alia,* School Defendants were made aware of the conduct and sexual harassment of J.M. against multiple children, and they knowingly permitted it to continue, carrying out what they knew to be an unconstitutional policy or practice in violation of the Fourteenth Amendment.

109. All School Defendants were all state actors, acting under the color of state law at the time the sexually and physically abusive conduct by J.M. occurred, and further, were all state actors, acting under color of state law at the time their unconstitutional policy or practice was in place and carried out.

110. All School Defendants have violated the rights of Jane Doe to personal security, bodily integrity, and equal protection under the law through their ongoing deliberate indifference to the sexual hostile and abusive actions of J.M., another student within the Defendant District for which they are responsible, and further, to the sexually and physically hostile environment created by J.M.'s actions.

111. All of the individual and collective failures of the School Defendants described in this Complaint, through their actions or inactions, have knowingly advanced the unconstitutional customs, practices, or standard of implementation or non-implementation of School policies, which in sum manifest clear deliberate indifference on the part of all School Defendants to both the sexual and physical abuse suffered by Jane Doe at the hands of J.M., as well as the potential for further abuse by J.M. made possible through their deliberate indifference and inaction.

112. All School Defendants are or were at the time of the events complained of herein, administrators or policymakers for the purpose of promulgating and/or implementing these unconstitutional customs, practices, or policies within the Defendant District, and were thus acting under color of state law.

113.    Jane Doe and her parents suffered extreme emotional distress and psychological damage and their character and standing in their community have suffered as a direct and proximate result of the sexually abusive and exploitative conduct of J.M. that was furthered by the failures of the School Defendants, manifesting an unconstitutional policy and practice on the part of the School Defendants.

114.    By reason of the aforementioned unconstitutional policies and practices of the herein named Defendants, Plaintiffs were deprived of her constitutional rights to equal protection and to be free from sexual harassment and a hostile environment, and suffered significant mental, emotional, physical, financial, and reputational harm, and further, if such an unconstitutional policy were permitted to continue, the herein named  Defendants will similarly deprive other persons within the State of New Jersey their constitutional rights as well.

**COUNT VI**
**NEW JERSEY LAW AGAINST DISCRIMINATION**
*AS TO ALL DEFENDANTS*
**(N.J.S.A. 10:5-1 *et seq.*)**

115.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

116.    The New Jersey Law Against Discrimination (LAD) prohibits discrimination and harassment based on actual or perceived race, religion, national origin, gender, sexual orientation, gender identity or expression, disability, and other protected characteristics. N.J.S.A. 10:5-1 *et seq.*

117.    In addition, N.J.S.A. 18A:36-20, New Jersey's analog to § 1681(a) of Title IX provides, "No pupil in a public school in this State shall be discriminated against in admission to, or in obtaining any advantages, privileges or courses of study of the school by reason of race, color, creed, sex or national origin."

118.   In *L.W. ex rel. L.G. v. Toms River Regional Schools Board of Education*, 189 N.J. 381, 915 A.2d 535 (N.J. 2007), the New Jersey Supreme Court recognized a cause of action for hostile educational environment under NJLAD. The Court held that to state a claim under NJLAD, an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile or offensive school environment and that the school district failed to reasonably address such conduct.  Id.  Even one incident of harassing conduct can create a hostile environment.  *C.V. by & through C.V. v. Waterford Twp. Bd. of Educ.*, 472 N.J. Super. 581, 277 A.3d 507 (App. Div. 2022)

119.   In addition, the New Jersey Supreme Court has held an individual within a public entity can be held liable under the NJLAD as an 'aider or abettor.' To be held liable as an aider and abettor, a plaintiff must show, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 853 A.2d 921, 928 (N.J. 2004) (internal quotations and citations omitted).

120.   Plaintiff Jane Doe faced discrimination based on her sex and gender. She was treated differently due to her sex and gender, given the lax approach the School Defendants had when a female reported sexual harassment by a male. Further, based on the fact that J.M. only targeted females, this discriminatory conduct would not have occurred but for Plaintiff Jane Doe's sex and gender, which are protected characteristics.

121.    Plaintiff Jane Doe was subjected to a hostile school environment due to the severe and pervasive harassment she suffered, and she was denied the ability to receive an education as a result of this hostile environment.

122.    The School Defendants had actual and constructive notice of this harassment and hostile environment because they were warned multiple times about J.M.'s repetitive conduct in the weeks leading up to the times Plaintiff Jane Doe was targeted.

123.    The School Defendants nevertheless took no measures whatsoever to stop it, and failed to protect Plaintiff Jane Doe against the harassment they knew was occurring, and did not reasonably address this conduct.

124.    The conduct alleged herein was performed by the School Defendants and their employees, while acting within the scope of their employment for which the School Defendants are liable to Plaintiffs for damages they sustained as a result of such conduct.

125.    The School Defendants were aiders and abettors of the discrimination and hostile educational environment suffered by Plaintiff Jane Doe.

126.    J.M., through the sexual harassment he carried out against Jane Doe, performed a wrongful act, aided by School Defendants, that injured Plaintiffs, as set forth at length in this Complaint.

127.    School Defendants knew or should have known that at the time they were aiding J.M.'s behavior that such behavior was tortious and illegal.

128.    School Defendants knowingly and substantially assisted J.M. in his pattern of sexual harassment, by deliberately refusing to take any action to stop him, despite being well aware of his repeated sexual harassment of female students, and despite their duty to protect such students, prevent such harassment, and report such incidents to the appropriate authorities.

Without the significant, knowing, and complicit assistance provided by School Defendants' deliberate decision to do nothing to stop him, J.M. would not have been able to continue his pattern of sexual harassment and ultimately target Plaintiff Jane Doe.

129.    By reason of the aforementioned discrimination and hostile educational environment, as well as the aiding and abetting of the tortious and illegal behavior of J.M. by School Defendants, Plaintiffs suffered significant mental, emotional, physical, financial, and reputational harm.

## COUNT VII
## NEW JERSEY ANTI-BULLYING BILL OF RIGHTS
### *AS TO SCHOOL DEFENDANTS*
**(N.J.S.A. 18A:37-13, *et seq.*)**

130.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

131.    The New Jersey Anti-Bullying Bill of Rights ("ABR") requires schools to prevent, report, investigate, and respond to harassment, bullying, and intimidation, as well as notify families of students involved, and mandates training for teachers, school staff, and school board members. N.J.S.A. 18A:37-13, *et seq.* Within one day of school personnel receiving a report of an incident, the anti-bullying specialist must investigate the incident. The investigation should be completed as soon as possible, but no later than 10 days after receipt of the initial report, and the results must be reported to the superintendent. Parents of all of the children must be notified right away.

132.    School Defendants violated the ABR in multiple ways, and these violations were the direct and proximate cause of Plaintiffs' injuries. These violations include, but are not limited to:

a.  No investigation was started despite School Defendants receiving multiple reports of J.M.'s ongoing sexual harassment.

b.  No investigation was completed within 10 days of the initial report.

c.  No investigation results were reported to the superintendent.

d.  Only the parents of J.M., and not those of his victims, were notified of the incidents.

e.  No report to DCPP or law enforcement was made until long after the first incident, and after Plaintiffs John and Joan Doe threatened to make such a report themselves.

133.    If School Defendants had followed the requirements of the ABR, J.M. would not have been able to continue his pattern of sexual harassment until he ultimately targeted Jane Doe.

134.    By reason of the aforementioned and other violations of the ABR by School Defendants, Plaintiffs suffered significant mental, emotional, physical, financial, and reputational harm.

**COUNT VIII**
**NEGLIGENCE**
*AS TO SCHOOL DEFENDANTS*

135.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

136.    All School Defendants named herein owed a duty of care to Jane Doe.

137.    Specifically:

a.  Defendant Zygmunt owed Jane Doe a duty of care as Principal Canfield Avenue Elementary School where Jane Doe was then students at the time of the subject events and occurrences;

    b.  Defendant Nittel, owed Jane Doe a duty of care as the Superintendent of the School District, thus making Jane Doe students under their charge;

    c.  Defendants School District and Board of Education owed Jane Doe a duty of care, as they were students within the district over which these Defendants have authority and control;

    d.  All the School Defendants owed Plaintiffs a duty imposed by the various contracts they had entered into with Plaintiffs. See Count XI, *infra*.

138.    All School Defendants have breached their respective duty of care to Plaintiffs in that they all failed to take ordinary reasonable care in the execution of their respective professional or personal responsibilities imposed both by law and by their own internal policies, as complained of herein.

139.    Specifically, but-for the failure of the School Defendants to promptly and effectively respond to the known occurrence of sexual harassment and abuse perpetrated by J.M., continued harassment and abuse perpetrated by J.M. upon Jane Doe on school grounds would not have occurred.

140.    Further, but-for the failures of the School Defendants himself to take affirmative steps to physically segregate J.M. so as to prevent him from having continued access to Jane Doe, Jane Doe would not have been deprived of the full educational benefits and opportunities afforded by the School Defendants.

141.    It is reasonably foreseeable that Jane Doe, as well as similarly situated students within the School District, and thus, under the care, supervision, and charge of the School Defendants, could have been harmed in the same or similar manner in which Jane Doe was harmed when a school district and its constituent administrators and school staff fail to take

appropriate and timely action in addressing known student-on-student sexual harassment and abuse.

142.   Therefore, the respective failures of all School Defendants as complained of herein were both the actual and proximate cause of the damages caused to Plaintiffs.

143.   As a foreseeable, direct, and proximate result of these failures of the School Defendants, Plaintiffs have sustained various damages, including, but not limited to, significant mental, emotional, physical, financial, and reputational harm.

**COUNT IX**
**<u>NEGLIGENCE</u>**
***AS TO MARQUEZ DEFENDANTS***

144.   Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

145.   Defendants DIEGO MARQUEZ, and DENISE CASOLA-MARQUEZ, ("Marquez Defendants") as parents of J.M., are responsible for J.M.'s conduct and have a duty to ensure that they are not negligent in their supervision of J.M. in a way that results in damages to another person.

146.   The Marquez Defendants have breached their duty of care to Plaintiffs in that they failed to take ordinary reasonable care in the parenting and supervisory responsibilities over their child, J.M., imposed both by law.

147.   Specifically, but-for the failures of the Marquez Defendants to exercise their power to control and supervise J.M. and prevent him from sexually harassing Jane Doe, when they knew or should have known of his conduct, the injuries complained of would not have occurred. It is reasonably foreseeable that Jane Doe and similarly situated children would be injured if J.M. is permitted to engage in sexual harassment.

148.    Therefore, the respective failures of the Marquez Defendants as complained of herein were both the actual and proximate cause of the damages caused to Plaintiffs.

149.    As a foreseeable, direct, and proximate result of these failures of the Marquez Defendants, Plaintiffs have sustained various damages, including, but not limited to, significant mental, emotional, physical, financial, and reputational harm.

**COUNT X**
**<u>NEGLIGENT HIRING, SUPERVISION AND RETENTION</u>**
***AS TO SCHOOL DEFENDANTS***

150.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

151.    To be found liable for negligent hiring or supervision, a plaintiff must show: (1) "the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *G.A.-H. v. K.G.G.*, 238 N.J. 401, 210 A.3d 907, 916 (N.J. 2019) . "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." Id.

152.    Importantly, "a board of education must take reasonable measures to assure that the teachers and administrators who stand as surrogate parents during the day are educating, not endangering, and protecting, not exploiting, vulnerable children." *Frugis v. Bracigliano*, 177 N.J. 250, 827 A.2d 1040, 1050 (N.J. 2003).

153.    Defendant Zygmunt was an unfit and incompetent employee, and School Defendants knew or should have known that Defendant Zygmunt disregarded credible

complaints by students of sexual harassment and was failing in his duties to protect the children under his care. They knew or should have known this because it had happened repeatedly.

154.    Jane Doe had difficulty even getting an audience with Zygmunt, and when she did report the harassment, he did not notify Jane Doe's parents or take any action until confronted by Jane Doe's parents. At that point, he confessed that multiple other students and/or parents had voiced similar complaints about J.M.'s harassment, and yet he had not taken any effective action to stop it or to protect the students.

155.    If indeed any aide was appointed to watch over J.M., that person also failed to do perform their duties, as evident by the fact that no one was actually watching J.M. when he committed these acts of harassment against Jane Doe.

156.    The School Defendants knew or should have known that any such aide was not actually supervising J.M. and was failing in their duties to protect the children under their care. They knew or should have known this because they would have been aware of such assignment and because J.M. was completely unsupervised in the crowded cafeteria where some of the sexual harassment took place, as shown in the surveillance video of the incident.

157.    If indeed the teachers were alerted to the activity and instructed to watch J.M., they clearly were not competent to do so, evidenced by the fact that J.M.'s behavior continued without any teachers noticing it.

158.    The School Defendants knew or should have known that any such teachers were not actually watching J.M. and were failing in their duties to protect the children under their care. They knew or should have known this because they would have been aware of such instructions and because no teachers noticed J.M.'s continued misconduct that took place in their vicinities.

159.    Therefore, the School Defendants knew or had reason to know that one or more of their employees was unfit, incompetent, and had dangerous attributes, and that such employees' conduct created a foreseeable risk of harm to students.

160.    School Defendants were negligent in hiring, retaining, and/or supervising these unfit employees, because they knew or should have known of their incompetence and still hired them, retained them, and/or failed to supervise them.

161.    A reasonably prudent employer would have detected this incompetence through a non-negligent hiring process, which could have weeded out those who would ignore repeated complaints of sexual harassment or instructions to supervise and prevent a child from engaging in sexual harassment. A reasonably prudent employer would not have negligently retained these incompetent employees who were failing to respond to complaints of sexual harassment and failing to carry out their supervisory duties to prevent further sexual harassment. A reasonably prudent employer would have provided proper supervision which would have prevented the incompetent employees from endangering students and harming the Plaintiffs by ignoring complaints of sexual harassment and failing to properly supervise a student known to be engaging in sexual harassment.

162.    As a foreseeable, direct, and proximate result of the negligent hiring, retention, and supervision by the School Defendants of their employees, Plaintiffs have sustained various damages, including, but not limited to, significant mental, emotional, physical, financial, and reputational harm.

**COUNT XI**
**BREACH OF CONTRACT**
*AS TO SCHOOL DEFENDANTS*

163.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

164.    By attending CAS, Plaintiff Jane Doe, through her parents, John Doe and Joan Doe, was a party to various contracts with the School Defendants as cited herein. Likewise, by enrolling their daughter in CAS, Plaintiffs John Doe and Joan Doe were also parties to these contracts with the School Defendants. These contracts include, but are not limited to, the Mine Hill Township Student Code of Conduct promulgated by Defendant BOE, the Mine Hill Township School District Student/Parent Handbook and all the associated provisions available on the Mine Hill School District website, Canfield Avenue School's HIB Policy (5512.01), and the HIB policy for the Mine Hill School District.

165.    Plaintiffs fulfilled all of their obligations under each of these contracts.

166.    All School Defendants had a contractual duty to intervene, investigate, and protect Jane Doe from sexual attack.

167.    This duty arose, in part, from Defendant BOE's own anti-sexual harassment policies, as well as from federal and state law.

168.    Specifically, Policy 5512 titled, "**HARASSMENT, INTIMIDATION, AND BULLYING**" ("Policy 5512"), provides in relevant part, "The Board of Education prohibits acts of harassment, intimidation, or bullying of a student." Policy 5512, Section A. And further provides, "The Board of Education requires its school administrators to implement procedures that ensure both the appropriate consequences and remedial responses for students who commit one or more acts of harassment, . . . ." Policy 5512, Section E

169.    The Policy further states that, "The Board requires a thorough and complete investigation to be conducted for each report of violations and complaints which either

identify harassment, intimidation, or bullying or describe behaviors that indicate harassment, intimidation, or bullying." Policy, Section G.

170.    This policy makes clear two things: (1) that an investigation on the part of the School Defendants is required, and (2) Use of the word "ensure" in the policy suggests that remedial measures are not discretionary, but rather, mandatory when a person is found to have violated Policy 5512.

171.    With respect to the School Defendants further obligations, Policy 5512 provides:

> The Board of Education requires the Principal at each school to be responsible for receiving complaints alleging violations of this Policy. All Board members, school employees, and volunteers and contracted service providers who have contact with students are required to verbally report alleged violations of this Policy to the Principal or the Principal's designee on the same day when the individual witnessed or received reliable information regarding any such incident.  All Board members, school employees, and volunteers and contracted service providers who have contact with students, also shall submit a report in writing to the Principal within two school days of the verbal report.
>
> * * *
>
> A school administrator who receives a report of harassment, intimidation, and bullying from a district employee, and fails to initiate or conduct an investigation, or who should have known of an incident of harassment, intimidation, or bullying and fails to take sufficient action to minimize or eliminate the harassment, intimidation, or bullying, may be subject to disciplinary action.

172.    In order to avoid "deliberate indifference," Policy 5512 makes clear that Zygmunt had a duty to timely investigate the reported sexual harassment.  Zygmunt breached that duty.

173.    Policy 5512 provides in that same section that:

> The Principal or designee will inform the parents of all students involved in alleged incidents, and, as appropriate, may discuss the availability of counseling and other intervention services. The Principal or designee shall take into account the circumstances of the incident when providing notification to parents of all students involved in the reported harassment, intimidation, or bullying incident and when conveying the nature of the incident, including the actual or perceived protected category motivating the alleged offense. The Principal, upon receiving a verbal or written report, may take interim measures to ensure the safety, health, and welfare of all parties pending the findings of the investigation. Policy 5512, Section E

174.    Zygmunt further failed, after receipt of complaints of sexual harassment and misconduct by J.M., to inform the parents of all students involved in alleged incidents, or discuss the availability of counseling and other intervention services.  Zygmunt also failed to take interim measures to ensure the safety, health, and welfare of all students pending the findings of the investigation.

175.    There is no evidence that any of the School Defendants, at any time, complied with the provisions of the aforecited policies. Rather, the facts alleged herein clearly demonstrate that the School Defendants breached multiple provisions of same.

176.    Further, there is nothing to suggest a timely investigation of any kind was conducted after receipt of complaints regarding sexual harassment against various students at CAS, let alone implementation of "interim measures to ensure the safety, health, and welfare of all students pending the findings of the investigation."

177.    Finally, and perhaps most importantly, it is absolutely apparent by J.M.'s continued presence at CAS exposed to Jane Doe to the sexual harassment and assault alleged herein.

178.    Not only was J.M. not expelled in connection with his sexual conduct, the only action which the School Defendants report to have taken – at least according to what Plaintiff was told by Defendant Zygmunt, is that the School was considering assigning J.M. an aide to accompany him in an attempt to prevent further abuse.

179.    Even assuming J.M. was accompanied by the aide, the aide proved to be an ineffective measure against preventing Jane Doe from further harassment and abusive conduct by J.M.

180.    All of the School Defendants had a reasonable opportunity to investigate the sexual conduct perpetrated by J.M. and intervene.

181.    Even so, all School Defendants failed to timely and properly investigate and intervene into J.M.'s abusive conduct, and thus, subjected Jane Doe to continued breaches of the School Defendants' contractual promises to ensure her personal security, bodily integrity, and equal protection under the law.

182.    All of these individual and collective failures of the School Defendants, through their actions or inactions, constitute breaches of multiple provisions of the various contracts between Plaintiffs and School Defendants, and these breaches are the cause of the damages suffered by the Plaintiffs herein, including, but not limited to, significant mental, emotional, physical, financial, and reputational harm..

## COUNT XII
## NEGLIGENT SUPERVISION OF STUDENTS
### *AS TO SCHOOL DEFENDANTS*

183.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

184.    School Defendants had a duty to supervise the students and provide a safe and secure learning environment at CAS.

185.    School Defendants breached that duty by their failure to protect Jane Doe from sexual harassment carried out by J.M.

186.    School Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because multiple incidents were reported to Defendant Zygmunt, as Defendant Zygmunt has admitted.

187.    Nevertheless, despite actual and constructive knowledge of the ongoing pattern of sexual harassment being carried out by J.M., one of their students, School Defendants breached this duty when they negligently failed to supervise J.M. and thereby prevent the harm that J.M. ultimately inflicted upon Plaintiffs.

188.    It is reasonably foreseeable that if a student engaged in a known pattern of targeted sexual harassment is not properly supervised, that student is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

189.    The School Defendants' negligent failure to supervise their student J.M. was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

## COUNT XIII
## NEGLIGENT FAILURE TO DISCIPLINE J.M. IN VIOLATION OF N.J.S.A. § 18A:37-2
### *AS TO SCHOOL DEFENDANTS*

190.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

191.    N.J.S.A. § 18A:37-2 states in relevant part,

Conduct which shall constitute good cause for suspension or expulsion of a pupil guilty of such conduct shall include, but not be limited to, any of the following:

…c. Conduct of such character as to constitute a continuing danger to the physical well-being of other pupils;

…k. Harassment, intimidation, or bullying.

192.    School Defendants had a duty to suspend, expel, or otherwise discipline J.M. for his pattern of sexual harassment of female students.

193.    School Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because multiple incidents were reported to Defendant Zygmunt, as Defendant Zygmunt has admitted.

194.    Nevertheless, despite actual and constructive knowledge of the ongoing pattern of sexual harassment being carried out by J.M., one of their students, School Defendants breached this duty when they negligently failed to suspend, expel,, or otherwise discipline J.M. and thereby prevent the harm that J.M. ultimately inflicted upon Plaintiffs.

195.    It is reasonably foreseeable that if a student engaged in a known pattern of targeted sexual harassment is not suspended, expelled, or otherwise disciplined, that student is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

196.    If J.M. had been suspended or expelled, he would not have been present at school to harm Jane Doe. Likewise, if other discipline had been imposed, J.M. would not have continued in his pattern of sexually harassing students. The School Defendants' negligent failure to suspend, expel, or otherwise their student J.M. was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

## COUNT XIV
## GROSS NEGLIGENCE
### *AS TO SCHOOL DEFENDANTS*

197.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

198.    A party is grossly negligent when their act or failure to act creates an unreasonable risk of harm to another because of that party's failure to exercise even a slight degree of care or diligence. *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344 (2016).

199.    As set forth more fully above, each of the School Defendants owed Plaintiffs a duty of care.

200.    School Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because multiple incidents were reported to Defendant Zygmunt, as Defendant Zygmunt has admitted.

201.    Nevertheless, despite actual and constructive knowledge of the ongoing pattern of sexual harassment being carried out by J.M., one of their students, School Defendants breached this duty by failing to act in any way to prevent the harm J.M. ultimately inflicted upon Plaintiffs. This failure to act created an unreasonable risk of harm to Plaintiffs and others similarly situated, because the School Defendants failed to exercise even a slight degree of care or diligence. Instead, they did absolutely nothing, and Plaintiffs were foreseeably harmed as a result.

202.    It is reasonably foreseeable that if the School Defendants failed to act or exercise even a slight degree of care in response to their actual and constructive knowledge that a student is engaged in a known pattern of targeted sexual harassment, that student is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

203.    If the School Defendants had not failed to act, J.M. would not have been present at school to harm Jane Doe. The School Defendants' gross negligence was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

### COUNT XV
### GROSS NEGLIGENCE
### *AS TO MARQUEZ DEFENDANTS*

204.   Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

205.   A party is grossly negligent when their act or failure to act creates an unreasonable risk of harm to another because of that party's failure to exercise even a slight degree of care or diligence. *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344 (2016).

206.   The Marquez Defendants, as parents of J.M., are responsible for J.M.'s conduct and have a duty to ensure that they are not negligent in their supervision of J.M. in a way that results in damages to another person.

207.   The Marquez Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because this behavior was reported to them prior to J.M.'s sexual harassment of Jane Doe, as Defendant Zygmunt has admitted.

208.   Nevertheless, despite actual and constructive knowledge of the ongoing pattern of sexual harassment being carried out by J.M., their son, the Marquez Defendants breached this duty by failing to act in any way to prevent the harm J.M. ultimately inflicted upon Plaintiffs. This failure to act created an unreasonable risk of harm to Plaintiffs and others similarly situated, because the Marquez Defendants failed to exercise even a slight degree of care or diligence. Instead, they did absolutely nothing, and Plaintiffs were foreseeably harmed as a result.

209.   It is reasonably foreseeable that if the Marquez Defendants failed to act or exercise even a slight degree of care in response to their actual and constructive knowledge that their child is engaged in a known pattern of targeted sexual harassment, that child is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

210.   If the Marquez Defendants had not failed to act, J.M. would not have been able to continue his pattern of misconduct and harm Jane Doe. The Marquez Defendants' gross

negligence was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

**COUNT XVI**
**WILLFUL, WANTON, RECKLESS CONDUCT**
*AS TO SCHOOL DEFENDANTS*

211.   Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

212.   To recover for injuries allegedly produced by willful and wanton misconduct, it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 305 (1970).

213.   School Defendants had actual and constructive knowledge that J.M. was engaged in a pattern of sexual harassment targeting female students, as Defendant Zygmunt has admitted. Further, School Defendants breached their duty by doing absolutely nothing to actually stop this behavior by J.M. and protect their students.

214.   School Defendants knew that injury would likely or probably result from their conduct and lack of action, they were recklessly indifferent to these likely consequences, and still consciously and intentionally chose to omit to discharge their duty to act to protect the students from the danger J.M. posed, which caused the Plaintiffs' injuries.

215.   As set forth more fully above, each of the School Defendants owed Plaintiffs a duty of care. School Defendants breached this duty when they failed to take action to prevent

J.M. from harming Jane Doe, despite their actual and constructive knowledge of the danger J.M. posed.

216.    School Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because multiple incidents were reported to Defendant Zygmunt, as Defendant Zygmunt has admitted.

217.    It is reasonably foreseeable that if the School Defendants failed to act or exercise even a slight degree of care in response to their actual and constructive knowledge that a student is engaged in a known pattern of targeted sexual harassment, that student is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

218.    If School Defendants had not failed to act, J.M. would not have harmed Jane Doe. The School Defendants' willful, wanton, and reckless conduct was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

## COUNT XVII
## WILLFUL, WANTON, RECKLESS CONDUCT
### *AS TO MARQUEZ DEFENDANTS*

219.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

220.    To recover for injuries allegedly produced by willful and wanton misconduct, it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result. *McLaughlin v. Rova Farms, Inc.*, 56 N.J. 288, 305 (1970).

221.    The Marquez Defendants, as parents of J.M., are responsible for J.M.'s conduct and have a duty to ensure that they are not negligent in their supervision of J.M. in a way that results in damages to another person.

222.    The Marquez Defendants knew or should have known of J.M.'s ongoing pattern of sexual harassment of female students like Jane Doe because this behavior was reported to them prior to J.M.'s sexual harassment of Jane Doe, as Defendant Zygmunt has admitted.

223.    Marquez Defendants knew that injury would likely or probably result from their conduct and lack of action, they were recklessly indifferent to these likely consequences, and still consciously and intentionally chose to omit to discharge their duty to act to protect the students from the danger J.M. posed, which caused the Plaintiffs' injuries.

224.    It is reasonably foreseeable that if the Marquez Defendants failed to act or exercise even a slight degree of care in response to their actual and constructive knowledge that a student is engaged in a known pattern of targeted sexual harassment, that student is likely to continue this pattern of behavior and cause damages of the type suffered by the Plaintiffs herein.

225.    If the Marquez Defendants had not failed to act, J.M. would not have been able to continue his pattern of misconduct and harm Jane Doe. The Marquez Defendants' willful, wanton, and reckless conduct was the but-for, actual, and proximate cause of the Plaintiffs' significant mental, emotional, physical, financial, and reputational harm.

## COUNT XVIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *AS TO SCHOOL DEFENDANTS*

226.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

227.    School Defendants, individually and collectively, intentionally inflicted emotional distress upon the Plaintiffs by deliberately refusing to act to stop J.M. from sexually harassing Jane Doe, when they had actual and constructive knowledge that J.M. was engaged in a pattern of sexual harassment targeting female students like Jane Doe.

228.    The infliction of emotional distress was preventable.

229.    This conduct by School Defendants of refusing to take any action to prevent Jane Doe from suffering sexual harassment by J.M. that they knew was occurring, was so extreme and outrageous that it went beyond all possible bounds of decency, and it was atrocious and utterly intolerable in a civilized community.

230.    School Defendants' aforesaid conduct was the direct and proximate cause of severe emotional distress, resulting in physical and mental pain and suffering, that the Plaintiffs suffered, and will continue to suffer. This severe emotional distress, which has caused significant physical symptoms, and required ongoing and future medical treatment, is so severe that no reasonable person could be expected to endure it.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *AS TO MARQUEZ DEFENDANTS*

231.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

232.    Marquez Defendants, individually and collectively, intentionally inflicted emotional distress upon the Plaintiffs by deliberately refusing to act to stop J.M. from sexually harassing Jane Doe, when they had actual and constructive knowledge that J.M. was engaged in a pattern of sexual harassment targeting female students like Jane Doe.

233.    The infliction of emotional distress was preventable.

234.    This conduct by Marquez Defendants of refusing to take any action to prevent Jane Doe from suffering sexual harassment by J.M. that they knew was occurring, was so extreme and outrageous that it went beyond all possible bounds of decency, and it was atrocious and utterly intolerable in a civilized community.

235.    Marquez Defendants' aforesaid conduct was the direct and proximate cause of severe emotional distress, resulting in physical and mental pain and suffering, that the Plaintiffs suffered, and will continue to suffer. This severe emotional distress, which has caused significant physical symptoms, and required ongoing and future medical treatment, is so severe that no reasonable person could be expected to endure it.

## COUNT XX
## FICTITIOUS PARTIES
### *AS TO FICTITIOUS DEFENDANTS*

236.    Plaintiffs reallege and incorporate by reference all prior and subsequent paragraphs as if fully stated herein.

237.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above, and incorporate same as if fully set forth at length herein.

238.    At all times relevant to this action, Defendants JACK DOES 1-10 and ABC ENTITIES 1-10, are fictitious names for Defendant individuals and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private business entities who participated in the tortious actions of Defendants described herein, whether by way of their negligence or in other ways as yet undetermined.

239.    As a direct and proximate result of the negligence and/or tortious conduct of Defendants JACK DOES 1-10 and ABC ENTITIES 1-10, Plaintiffs have been caused to suffer, and in fact did suffer, significant damages.

240.    Plaintiffs allege an insufficient opportunity to determine the identity of all individuals or business entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiffs.

241.    As such, Plaintiffs specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs John Doe and Joan Doe, individually, and on behalf of Jane Doe, their minor child, prays for relief as to all counts as follows:

1)    For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages, with interest;

2)    Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. 2255, 42 U.S.C. 1988, and N.J.S.A § 10:6-2(f);

3)    For such other further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

**LENTO LAW GROUP, P.C.**

SAMUEL D. JACKSON, ESQUIRE
*Attorney for the Plaintiffs*

DATED: <u>Mach 21, 2023</u>